**ELEETS TRANSPORTATION COMPANY, INC.**
P.O. Box 50610
Jacksonville Beach, FL 32250-0610

FILED
JACKSONVILLE, FLORIDA
JAN 07 2013
CLERK, U.S. BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA

January 3, 2013

The Honorable Jerry A. Funk
c/o Clerk of the Bankruptcy Court
300 N. Hogan Street, Suite 3-350
Jacksonville, FL 32202

    Re:    *In re Eleets Transportation Company, Inc.*
           Involuntary Bankruptcy Petition filed December 28, 2012
           Case No. 3:12-bk-08151-JAF

Dear Judge Funk:

On December 28, 2012, an involuntary Chapter 7 bankruptcy petition was filed against Eleets Transportation Company, Inc. (the "Company"), Case No. 3:12-bk-08151-JAF.

Local Bankruptcy Rule 1074-1 provides that a corporation may only appear and be heard in Bankruptcy Court through counsel. The Company does not have the funds to engage counsel and therefore will not be responding formally to the petition. The Company submits this letter in order to provide background information to the Court and interested creditors concerning the Company and the events giving rise to the involuntary petition.

### Factual Background

The Company and its affiliates, including Eleets Logistics, Inc. (collectively, "Eleets"), historically operated a trucking, freight brokerage and logistics business based in Jacksonville, Florida.

In November, 2011, Eleets entered into a secured revolving loan facility with Wells Fargo Bank, pursuant to which the Bank would make advances under a line of credit to fund

Eleets' checks and the Bank would collect all Eleets' accounts receivable through a lock-box arrangement. The Bank received a first priority, perfected UCC security interest in substantially all Eleets' assets, including accounts receivable and equipment. The truck fleet was leased and did not have substantial equity value.

During the spring, summer and fall of 2012, Eleets suffered substantial losses which resulted in defaults under the Bank's loan documentation.

At the Bank's recommendation, Eleets hired Phoenix Management Services LLC of Chadds Ford, Pennsylvania to provide restructuring and turnaround services. In order to solve its financial problem, Eleets attempted to raise additional capital, restructure operations as a profitable enterprise, and alternatively to sell its business as a going concern to a larger transportation firm. Although a larger carrier expressed interest in acquiring Eleets, the potential buyer withdrew from the discussions on or about November 8, 2012.

Upon learning of the breakdown in the negotiations regarding sale of the Company and faced with both Eleets' continuing losses and Eleets' inability to raise additional capital or refinance the Bank's loan, the Bank advised Eleets that it would not fund additional advances under the line of credit. As a result of the loss of financing from the Bank, which was essential for payment of its employees and vendors and normal business operations, Eleets immediately terminated business operations and attempted an orderly liquidation of its assets in cooperation with the Bank, as its secured creditor.

At the time Eleets terminated operations, management believed the liquidation of the Bank's collateral would be insufficient to repay fully the loan. At that time, Eleets owed the Bank approximately $7 million and Eleets had accounts receivable with a face value of approximately $10 million. However, a substantial portion of the accounts receivable resulted

2

from the so-called "brokerage" business, where Eleets contracted with customers to ship goods and separately contracted for third party carriers to actually transport the goods. Although management believes Eleets has valid accounts receivable, management anticipated that in a liquidation scenario, many third party carriers would assert claims against the customers, which would result in the customers' uncertainty and fear of potentially being required to "pay twice." The end result is a delay in payment until the conflicting claims are compromised or resolved.

Phoenix Management, working closely with the Bank and Bret Holmes, the Company's CFO, managed and supervised the liquidation efforts. The Bank funded the liquidation process pursuant to budgets recommended by Phoenix Management. Bret Holmes, the CFO of the Company, was the only Company employee remaining during the liquidation process. Although Phoenix Management technically worked for Eleets, as a practical matter the Bank has the greatest economic interest in collecting the receivables.

The Company has sold all its furniture and office equipment and turned over the net proceeds to the Bank.

The Company hired University Management Associates and Consultants, Inc., a collection firm recommended by Phoenix Management or the Bank, to handle collection of the accounts receivable.

The Company has no cash on hand because the Company funded its liquidation expenses by advances from the Bank on the line of credit.

Upon the filing of the involuntary petition, the Bank refused to make further advances under the line of credit. As a result, the Company has not paid the two-week salary due to Bret Holmes on December 31, 2012 or the fees to the computer service bureau and software vendors which host and support the Company's accounting records. At the present time, the Company

does not have access to the Company's computerized accounting records because of the failure to make the January, 2013 payments. The Company assumes the collection firm has not been paid to the extent payments were to be funded under the line of credit.

If the involuntary bankruptcy proceeds, the Company will of course endeavor in good faith to cooperate with the Chapter 7 Trustee. However, without funds to pay the salary of the CFO, its sole remaining employee, and the fees owed to the software and computer hosting vendors, the Company believes it will be impossible for the Company to prepare the financial information and schedules required by the bankruptcy rules. In addition, certain financial information is in the control of the collection firm and Phoenix Management.

The Company also believes that there are no unencumbered assets to be administered by a Chapter 7 Trustee. The Company has no knowledge of any basis to attack the Bank's first priority lien on its assets and sees no realistic prospect that the Bank will be repaid in full. Although the third party carriers may be asserting competing claims against the customers, these claims do not belong to the Company and the Company does not see how they can benefit the Company's unsecured creditors.

Because of the Company's inability to access its computerized accounting records, the Company cannot verify the claims of the petitioning creditors. The Company would note, however, that to the extent the petitioning creditors are third party carriers pursuing competing

claims for payment directly from customers, their motives in pursuing the involuntary bankruptcy may not be consistent with the interests of the general creditors of the Company.

Very truly yours,

ELEETS TRANSPORTATION COMPANY, INC.

Allen J. Steele
Its President

cc: Raymond J. Rotella
Allen Weiss
Bret Holmes
James S. Rankin, Jr.
David Burns